**Condro SISWANTO, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 06–1608.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 2, 2008.

Opinion filed April 9, 2008.

Lisa A. Baird, Philadelphia, PA, for Petitioner.

Erica B. Miles, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: McKEE, NYGAARD and ROTH, Circuit Judges.

OPINION

PER CURIAM.

Condro Siswanto petitions for review of a final order of removal issued by the

Board of Immigration Appeals ("BIA"). We will deny his petition.

## I.

Siswanto, a native and citizen of Indonesia, entered the United States in December 1999 and failed to depart the country when his visa expired in May 2000. In July 2001, he filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He claimed that he was persecuted in the past, and feared persecution in the future, because he is an ethnic Chinese Christian. A notice to appear was issued in August 2001, and Siswanto conceded his removability.

Siswanto retained the Law Office of Haian Lin to represent him. A merits hearing was held before the Immigration Judge ("IJ") on May 25, 2004. An attorney from Mr. Lin's office requested leave to withdraw from the representation on account of an alleged fee dispute. (AR77.) The IJ denied the request. Siswanto was then provided a choice of either going forward with the merits hearing on his own or using the attorney who was present at the time. (AR77–78.) Although apparently confused by the choice, Siswanto indicated that he did not want to proceed pro se and requested a continuance because he had "not practic[ed]" his testimony with the attorney. (AR000078.) Emphasizing that the matter had been pending for approximately four years, the IJ denied a continuance, and the merits hearing continued as scheduled.

Siswanto then testified about prior acts of alleged persecution against him and his family and his alleged fear of returning to Indonesia. In an oral decision, the IJ determined that the asylum request was untimely and that Siswanto failed to establish extraordinary or changed circumstances regarding his delay. The IJ then denied his requests for withholding of removal and CAT relief. Siswanto filed a counseled appeal to the BIA. Expressly adopting the IJ's decision and offering its own reasoning as well, the BIA dismissed the appeal on January 17, 2006. It permitted Siswanto to depart the country voluntarily but ordered him removed if he failed to do so. Siswanto, through counsel, filed a timely petition for review.

## II.

We have jurisdiction over this matter pursuant to 8 U.S.C. § 1252. Because the BIA adopted the opinion of the IJ and then added its own reasoning, we must review both the BIA's decision and the IJ's opinion. *See, e.g., Jarbough v. Attorney General,* 483 F.3d 184, 191 (3d Cir.2007). We review their respective factual findings under the substantial evidence standard. *See, e.g., id.* Siswanto argues in his counseled brief that: (1) his due process rights were violated when the IJ denied a continuance of his merits hearing; and (2) insufficient consideration was given to the alleged acts of past persecution he suffered in Indonesia and whether there was a "pattern or practice" of anti-Christian and anti-Chinese persecution in Indonesia. His two contentions, however, must be rejected.

In order to prevail on a due process challenge to his hearing procedures, an alien " 'must show substantial prejudice.' " *Id.* at 192 (quoting *Singh v. Gonzales,* 432 F.3d 533, 541 (3d Cir.2006)). Siswanto claims that he never met with the attorney before the merits hearing and had no warning that this attorney would even appear at the hearing. He therefore allegedly was denied an opportunity to prepare for his hearing with counsel and "could not meaningfully or effectively present his case." (Petitioner's Br. at 7.) How-

ever, in the words of the BIA, Siswanto still fails to identify "what relevant facts, evidence, or other aspects of his claim he was prevented from adequately presenting" due to the denial of his continuance request. (AR000003.) On the contrary, he was questioned at the hearing by his attorney and was apparently able to provide a rather detailed account in support of his claims for relief. Furthermore, his hearing counsel was employed by the law firm he had previously retained. Accordingly, the IJ's denial of a continuance did not prevent Siswanto from reasonably presenting his case, and, as such, we conclude that he was not deprived of due process. *Jarbough*, 483 F.3d at 192 (quoting *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002)).

 To obtain withholding of removal, Siswanto had to show, by a clear probability, that his life or freedom would be threatened in Indonesia. *See, e.g., id.* at 190–91. The BIA agreed with the IJ that he failed to make such a showing.[1] Siswanto argues that the IJ ignored the evidence presented at his hearing. (Petitioner's Br. at 8.) The IJ summarized Siswanto's testimony, apparently accepted his testimony as true, and then concluded that the alleged incidents described by Siswanto do not amount to persecution on account of a protected ground. In such circumstances, we must reject Siswanto's assertion of a "cavalier dismissal of the record." (*Id.*)

 Furthermore, the finding that the described incidents do not amount to past persecution is supported by substantial evidence in the record. Siswanto refers in his brief to "a racially motivated assault and robbery, racially motivated burning and looting of his family's business [during the 1998 riots] and racially motivated sexual assaults against one of his sisters and a number of his friends when he was with them." (*Id.* (citations omitted).) However, there is adequate evidentiary support to find that such unfortunate criminal acts, committed by non-governmental actors, are insufficiently severe to constitute persecution. *See, e.g., Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir.2005) ("Simple robbery, in isolation, while unfortunate and troubling, does not seem to meet this stringent standard."); *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993) (stating that "concept of persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."). For instance, Siswanto testified that his female friends and sisters were inappropriately touched by native Indonesians. However, he actually admitted that his friends did not report the inappropriate contact because they considered it a "small incident." (AR000095.) Likewise, the incident when native Indonesians threatened and mugged him with a knife while he was on a motorbike occurred more than ten years before he left the country, and he did not apparently suffer any physical harm as a result. It further appears that neither Siswanto nor his family was physically harmed during the 1998 riots and that his family members have continued to live in Indonesia without any

---

1. The IJ rejected Siswanto's request for asylum as untimely, concluding that he failed to satisfy the changed or extraordinary circumstances standard for a late application. *See, e.g.,* 8 U.S.C. §§ 1158(a)(2)(B), (D). The BIA, in turn, expressly agreed with the IJ's untimeliness determination. An administrative determination that an asylum application was untimely is generally unreviewable by this Court. *See, e.g.,* 8 U.S.C. § 1158(a)(3). Furthermore, Siswanto failed to brief the denial of his CAT claim, and we conclude that any claim under the Convention was waived. *See, e.g., Chen v. Ashcroft*, 376 F.3d 215, 221 (3d Cir.2004); *In re Surrick*, 338 F.3d 224, 237 (3d Cir.2003).

physical harm.[2]

■ Siswanto further argues that he was entitled to withholding of removal on account of an alleged pattern or practice of persecution. *See, e.g.,* 8 C.F.R. § 1208.16(b)(2). According to Siswanto, the BIA's rejection of his "pattern or practice" allegations was erroneous because of our suggestion in *Sukwanputra v. Gonzales,* 434 F.3d 627 (3d Cir.2006), that "it was far from a settled matter whether a pattern or practice of persecutory treatment of Chinese Christians in Indonesia exists, casting Petitioner's testimony and evidence, and whole case, in a new and different framework." (Petitioner's Br. at 8–9.) However, we simply held that the IJ erred in failing to even consider the petitioners' claim of a pattern or practice of persecution against Chinese Christians. *Sukwanputra,* 434 F.3d at 637. We further refused to find "that the *Lie* decision establishes that [such a pattern or practice] does not exist" because the current record included a 2001 country report not before the Court in *Lie. Id.* at 637 n. 10. In this case, the BIA and the IJ did consider Siswanto's claim, with the BIA specifically stating that he "has not identified any evidence in support of this vague assertion [of a pattern or practice], which we do not find is supported by the record." (AR000003.) Furthermore, the 2000 country and 2001 religious freedom reports, which are included the administrative record, confirm that the Indonesian government generally respected freedom of worship, at least officially promoted ethnic and religious tolerance, and that attacks against ethnic Chinese citizens continued to drop since 1998. *See, e.g., Lie,* 396 F.3d at 537–38 (concluding that there was no pattern or practice of persecution against ethnic Chinese Christians in Indonesia based in part on 1999 country report showing sharp decline in violence since 1998 riots). Therefore, the BIA committed no reversible error in rejecting his "pattern or practice" allegations, and we must ultimately hold that substantial evidence supports the denial of withholding of removal.

III.

For the foregoing reasons, we will deny the petition for review.

---

2. He did testify that his parents were allegedly humiliated at the market while bargaining with a vendor who asked them "why you Chinese" bargain. (AR000098.) Such an alleged slur is clearly not severe enough to constitute persecution.